UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

HOWARD KATZ,

        Plaintiff,

    -against-

JOE ROBERT MOGUS, et al,

        Defendants.

-------------------------------------------------------X

AFFIRMATION IN OPPOSITION OF
MOTION TO DISMISS

CV 06-0574 ((DLI))(JO)

STATE OF NEW YORK
COUNTY OF KINGS

I, Howard Katz, affirm under the penalties of perjury and states that I have knowledge of the foregoing and it is true, as follows:

1. On December 13th [1999?], Defendant personally signed an admission acknowledging and conceding an outstanding debt in excess of $250,000.00 signed by Joe Mogus, Defendant. See Exhibit "A".

2. In a letter dated February 19, 1996, Mr. William Kirkpatrick, Esq., wrote "if something should happen to Mr. Mogus, such that he might be incompetent or disabled in such a way as to be unable to properly manage his business, that I [Mr. Kirkpatrick] feel comfortable that I would be able to assist him in the continuation of that business in such a manner as to not jeopardize his credit relationship with you [Plaintiff]." See Exhibit "B".

3. Defendant filed an Application For Appointment of Counsel on June 12th, 2006. In response to why a lawyer is necessary, Defendant wrote, "Absolutely – my attorney is hospitalized – she was a friend would do pro bono – I am bewildered." There is no documentation of an agreement between Defendant and an attorney aside from Mr.

Kirkpatrick, Esq. In response to what steps were taken and with what results, Defendant wrote, "I really have little money. There are no attorneys here, licensed in New York." See Exhibit "C".

4. In a letter dated May 16th, 2006, Defendant refers to said attorney as Pamela Reiman, Esq. of Berkley Springs, West Virginia. See Exhibit "D".

5. Defendant moves for dismissal of case on May 27th, 2006. This affirmation is in opposition to the motion to dismiss.

6. In reference to an alleged typographical error regarding the Defendant's address by counsel of Plaintiff, Defendant asks "this honorable court to dismiss the entire case" on June 21st, 2006. He states "At any rate accepting Mr. Klein [Plaintiff's counsel] at his word this being an error, (his confusing New York with West Virginia)." The Defendant repeatedly did business with the Plaintiff in this venue and repeatedly communicated with the Plaintiff in this venue and had every expectation that it would be this venue which any action would be commenced. See Exhibit "E".

7. On April 21st, 2006, Defendant sent an email to the Federal Court Eastern District New York. Within this email, Defendant claims to "…have offered in writing to meet Katz [Plaintiff], to sit and resolve this..." Because Defendant further "does not deny an outstanding balance," it is unknown as to what sort of resolve the Defendant implied – as opposed to paying Plaintiff outstanding balance in full. See Exhibit "F".

8. Defendant personally made arrangements for Plaintiff's repayment of the debt owed in the event of Defendant's death. On April 18th, 2000, Defendant filed an addendum to his Will at Morgan County Courthouse in Berkeley Springs, West Virginia. Within this document, Defendant wrote, "I [Defendant] wish to make Howard Katz the primary

beneficiary of my estate in the event of my death. It is my intention that Mr. Katz receive first consideration even before my mother and sister to an amount <u>equal</u> to what is owed to Howard Katz at the time of my death." Defendant disclosed personal financial information to Plaintiff for reasons unknown. See Exhibit "G".

9. In an undated letter to Plaintiff, Defendant listed monthly personal living expenses. These include, but are not limited to, cable, phone, and electric costs, car insurance, mortgage expenses, health insurance, etc. He additionally includes his tax fees and states, "I [Defendant] did not include food etc [in the list] but that is about 125 per week for food etc. as you know I do not have a fancy lifestyle." He subsequently discusses his most substantial expense, credit cards, and how it cost him $100,000.00 over four years. He closes this letter with: "I also felt you had a right to know whats going on with my expenses etc." This letter was not accompanied with related documentation (i.e. sales receipts, expense bills, etc). See Exhibit "H".

10. In a letter to Plaintiff on July 14th, 2005, Defendant describes his personal expenses:

"During the three years I [Defendant] spent liquidating the inventory (some of which you [Plaintiff] called junk) in those three years I paid myself to live perhaps $60,000 I have to eat. I also had expenses of perhaps $15,000 to run the business. Total $75,000 – did you think I have no expenses. I also as you know given 15% to the sellers this would account for perhaps 10 to $12,000 wouldn't it – did you even consider that to sell the jewelry there is expenses did you ever calculate this – Did you think there are no expenses." See Exhibit "I".

11. Defendant states, "I am virtually broke and would qualify for bankruptcy as would All That Glitter Inc – both nothing in excess of 1000 dollars – for either." See Exhibit "J".

_Howard Katz_

Howard Katz


Affirmed and Subscribed to before me
July 12 , 2006

_Notary/Official_

Notary/Official

SIGNED AND SWORN BEFORE ME
ON 7-12-06
PAUL J MERMELSTEIN
NOTARY PUBLIC, State of New York
No. 01ME4764145
Qualified in Kings County, Commission Expires Feb. 28 2007